JOHN W. WITHEE, *Executor, versus* MOSES ROWE, *Appellant.*

In appeals from the Probate Court, when questions of fact arise, the proceedings are analogous to the proceedings in courts of equity, when issues of fact are prepared for the jury, under the direction of the Court. The *form* of the issues may be agreed upon by the parties, subject to the approval of the Court; or, if the parties disagree, (as to the form of the issue,) that matter may be referred to a master.

But the Court will determine what questions shall be submitted to the jury. When the appeal is from a decree allowing and approving a will, various questions of fact, as well as of law, may be involved; and whether the facts in dispute shall *all* be settled by the jury, is subject to the discretion of the Court. There may be important questions of fact, not submitted to the jury, which will control the final decree of the Court.

Upon such an appeal, the great question, embracing all others, is whether the instrument is the last will and testament of the person appearing on its face to be the testator. But this is not a question for the jury. It involves matters of law, as well as of fact, and is to be determined by the Court, in the final decree, upon the law applicable to all the facts, whether settled by the jury, or by the Court.

Upon such an appeal, three distinct issues of fact were submitted to the jury under the direction of the Court: — (1.) the signing of the alleged will by the supposed testatrix; (2.) the sanity of the supposed testatrix; (3.) the attestation of the alleged will. Upon these issues the jury returned one verdict only, " that the instrument is not the last will and testament of M. E. W.," the supposed testatrix. *It was held* that the verdict did not find the issues presented, and, being defective and uncertain, was void.

Issues of fact in Probate are to be tried, and the verdict rendered, recorded, and affirmed, with the same precision and strictness, and according to the same rules as in proceedings at common law. Until a verdict is declared and affirmed by all the jury, in open court, and constructively recorded, it is of no force. And this rule applies as well to special as to general verdicts.

A witness, who is an expert, may give his opinion whether a signature is genuine or simulated, upon an examination thereof at the time of trial, though he is unacquainted with the handwriting of the person whose signature it purports to be.

One who has been treasurer and clerk of a railroad company, and who has been accustomed to examine signatures upon transfers of stock, and upon bank bills, in order to determine their genuineness, may be admitted to testify as an expert.

MOTION for a new trial, and EXCEPTIONS to the ruling of APPLETON, J.

This case was an appeal from the decree of the Probate Court for the county of Penobscot, allowing and approving a certain instrument, as the last will and testament of Mary E. Withee. The following issues were framed and joined by the counsel for the parties, under the direction of the Court, and were submitted to the jury upon the evidence in the case.

(1.) And now the said appellant comes, &c., and for plea, says that said supposed will was not signed by the said Mary Elizabeth Withee, or by some person in her presence and by her express direction, and of this he puts himself on the country.

(2.) And for further plea, &c., says that said supposed testatrix was not of sound mind at the time of said execution of said instrument, and of this, &c.

(3.) And for further plea, &c., that the said instrument was not duly attested, and of, &c.

After the testimony was finished, the following questions were prepared and given to the jury, with directions to answer them in writing, according as their finding should be.

(1.) "Did the testatrix sign the will; or was it signed in her presence, and by her express direction?"

(2.) "Was said testatrix of sound mind when said will was executed?"

(3.) "Was said will duly attested?"

To each of these questions the jury, on coming into Court, returned in writing, as their answer, "Nay"; each answer being signed by their foreman, who delivered the questions with the answers thereon, to the clerk, and they were by him

read aloud in open Court. But they were not otherwise read, affirmed or recorded.

Before the jury retired, they were instructed by the presiding Judge that they need not return a verdict with their answers and the questions; but that, on their return, a verdict would be prepared for them, according to their answers.

After the jury returned, and the questions and answers had been read by the clerk, the counsel for the appellant prepared a verdict, which was exhibited to the Court, and then was signed by the foreman of the jury. After stating the term of the Court and the names of the parties to the case, the verdict is as follows:—" The jury find that the said instrument, offered as the last will and testament of Mary Elizabeth Withee, is not the last will and testament of the said Mary Elizabeth Withee."

This verdict was then returned by the jury, read aloud by the clerk, affirmed by the jury, and recorded in the usual manner.

After the jury had been discharged, on the same day, the appellee filed a motion that the verdict be set aside and a new trial granted,—

1. Because said verdict is against the evidence in the case.

2. Because it is against the weight of evidence.

3. Because it is against law.

4. Because the verdict does not conform to, follow, or find upon the several issues, or any of them, joined in this case.

5. Because the verdict does not find that the said paper, purporting to be the will of Mary Elizabeth Withee, was not duly signed by the said Mary, nor that the said Mary was not of sound and disposing mind at the time of executing the same, nor that the same was not duly attested and subscribed, nor any thing in relation to any of said questions or issues, as set forth in the several pleas and issues joined under the direction of the Court.

6. Because said verdict assumes to find a conclusion, and not the facts put in issue as aforesaid, from which the Court alone could draw a conclusion, and thereby by said verdict

the jury have assumed to find and declare a result which they could not legally find.

7. Because no issue joined in the case presented the matter found by the jury.

8. Because said verdict, in other and in all respects, is so informal, insufficient, argumentative, general and defective, and irresponsive to the issues, that no judgment can be legally rendered thereon.

This motion was overruled by the presiding Judge, and the appellee excepted.

It is unnecessary to publish a report of the evidence, as the opinion of the Court will be readily understood without it. Several points were raised by the exceptions, and discussed at great length by counsel, which were not considered by the Court.   They are therefore omitted.

Upon the question of the genuineness of the signature of the supposed testatrix, the appellant called N. D. Gould as a witness, who was admitted to be an expert.   The signature to the instrument purporting to be a will was exhibited to him.   He did not profess to have any knowledge of the handwriting of the testatrix.   He was asked if, in his opinion, the signature was genuine.   He answered, that he did not think it a genuine signature of anybody.   The question and answer were seasonably objected to by the appellee, but were admitted by the Court.

The appellant also called Elias Merrill as an expert.   Upon examination by the Court, he testified that he had been treasurer and clerk of the Penobscot and Kennebec Railroad Company for five years, and had kept the books of the corporation; and that he had been in the habit of examining the signatures to transfers of stock, and also the signatures to bank bills, to test their genuineness.

The appellee contended that this was not sufficient evidence of the qualifications of the witness to testify as an expert, and objected to his being permitted to testify in that capacity. But he was admitted by the Court.

To these and various other rulings, many of which were not considered by the full Court, the appellee excepted.

The motion and exceptions were elaborately argued by *Kent* for the appellee, and by *Rowe* and *A. Sanborn* for the appellant.

*Kent*, for the appellee, presented the following points: —

1. The *questions and answers* returned by the jury did not constitute a *verdict.* They were not so understood by the Court, nor the jury, nor the parties. The jury were expressly instructed, before they retired, that they need not return any verdict, but that one would be prepared for them upon their return, in accordance with their answers. No one supposed that their answers were the verdict, or any part of it. They were findings preparatory for, and preliminary to the verdict.

And, if intended for a verdict, they did not become complete and valid as such, because they were neither affirmed by the jury, nor recorded by the Court. No verdict can be regarded as final and valid " until it is pronounced and recorded in open court." *Goodwin* v. *Appleton*, 22 Maine, 453. Until that was done, the jury had the right to alter it. It is the affirmation of the verdict by the jury in open court, and its being recorded, that give it its validity, and make it final and conclusive upon the parties. *Roberts* v. *Rockbottom*, 7 Met. 49. Until a verdict is read in open court, to the jury, and they each and all assent to the announcement of the clerk, " So you say, Mr. Foreman ; and, so you all say, gentlemen," any juror may revoke his consent to it. Up to that point, there is a *locus penitentiæ.* It is this public affirmation of it, in open court, that gives it its validity, and stamps it as conclusive. *Root* v. *Sherwood*, 6 Johns. 68 ; *Blackley* v. *Sheldon*, 7 Johns. 32.

That the questions and answers were thus read to the jury, affirmed by them, and recorded by the Court, is not pretended. They, therefore, are not the verdict ; and, if so intended, are invalid, and cannot be the basis of a decree by the Court.

2. The only verdict, therefore, is that rendered by the jury, "that the instrument was not the last will and testament" of the supposed testatrix. ·

And this, we contend, was not a finding upon either of the issues presented to the jury by the pleadings in the case. There might have been many other reasons, involving other issues than those framed by the parties, why the instrument was not her last will and testament. And, *non constat* but that the verdict of the jury was based upon other facts, not submitted to them.

It might not have been her *last* will and testament, because there was another of later date.

Or, the will might have been defective for want of apt words for such an instrument, and therefore invalid.

Or, it might have been obtained by fraud and deception. Or the testatrix might have been incapable of making such a will, on account of her coverture. *Parker* v. *Parker*, 11 Cush. 519.

The verdict, therefore, does not establish the fact, either one way or the other, upon either one of the issues presented to the jury. Instead of furnishing the Court with judicial information of the facts in dispute, so as to enable it to make a final decree in the case, the jury have usurped the place of the Court, and have undertaken themselves to make the decree.

And, if the Court could be presumed to know, judicially, (which it certainly cannot,) that there were no other facts in controversy except those submitted to the jury, the difficulty is not obviated. For, throwing the questions and answers aside, which it is confidently believed the Court will do, because not recorded and affirmed, the *verdict* furnishes no evidence that the jury agreed upon any one of the issues framed by the parties. They may have all been of the opinion that the will was invalid; *some*, because the testatrix was insane; *some*, because she never signed the will; and *some*, because it was not duly attested. And, though all not agreeing upon *any one* of these questions, they still might have

Withee *v.* Rowe.

agreed to the verdict; which, after all, was a finding upon matters of law, quite as much as upon matters of fact.

A verdict, in all cases, must conform to the issues presented, and be a definite finding thereon. See *Gerrish* v. *Train*, 3 Pick. 124; *Shapleigh* v. *Wentworth*, 13 Met. 358; *Stiles* v. *Granville*, 6 Cush. 658; *Patterson* v. *U. States*, 2 Wheat. 221; *Brown* v. *Henderson*, 4 Mumf. 492.

3. The presiding Judge erred in admitting the testimony of Gould. Though an expert, he did not claim to have any knowledge of the handwriting of the testatrix, and should not have been allowed to give his opinion in regard to its genuineness. The authorities are conflicting; but there is no decision of this Court sustaining the admission of such evidence.

4. Elias Merrill was not qualified to testify as *an expert*, and ought not to have been admitted as such a witness. The question of his admission, upon the facts testified to by him, before his examination in chief, was one of law. See Greenl. Ev. § 581, note.

Such testimony is exceptional, and is to be admitted with great caution. *Doe* v. *Suckmore*, 5 A. & E. 751; *Gurney* v. *Langland*, 5 B. & A. 330.

His testimony is not admissible, unless he is shown *in fact* to have been an expert. *Page* v. *Homans*, 14 Maine, 478.

An expert must be a person of extraordinary skill in the matter to which he is called. "Such testimony must, in its very nature, be confined to scientific men, extensive and trained observers, deriving skill from professional experience." *Norman* v. *Wells*, 17 Wend. 162. See also, *Lyon* v. *Lyman*, 9 Conn. 160; *Robinson* v. *Stark*, 15 N. H. 112; *Moody* v. *Rowell*, 17 Pick. 496; *Lincoln* v. *Barry*, 5 Cush. 590.

In the case of *People* v. *Spooner*, 1 Denio, 343, the witness offered had been a clerk in chancery ten or eleven years, and had been accustomed to examine signatures as to their being genuine. And, because he was admitted, a new trial was granted. Bronson, C. J., in giving the opinion of the Court, said "there was nothing, either in the official employment or in the profession of the witness, that proved that he had a

higher degree of skill than such as is common to several large classes of individuals."

The witness in that case may be presumed, certainly, to have had as much skill and experience as the witness in the case at bar.

*Rowe*, for the appellant, replied, *first*, to the objections taken to the testimony of the experts; and then, to the objections urged to the *verdict*.

1. In regard to the testimony of Gould, it is submitted that the ruling of the Court was in accordance with the better opinion, both in this country and in England. *Revett* v. *Braham*, 4 T. R. 497; *Rex* v. *Catoe*, 4 Esp. 117. In *Moody* v. *Rowell*, 17 Pick. 490, all the authorities are elaborately discussed by SHAW, C. J.; and the case of *Gurney* v. *Langland*, cited for the appellee, is pronounced unsound.

The next question is whether the Court erred in admitting Mr. Merrill to testify as an expert, upon the facts disclosed on the *voir dire*. Those facts are, that he had been for five years treasurer and clerk of the Penobscot and Kennebec Railroad Company; that he had been in the habit of examining signatures, in his business of treasurer and clerk, and of examining bank bills to test their genuineness.

It is admitted that, in this State, experts are admissible to testify upon comparison of handwritings. In New York, they are not so admitted. In England, the practice varies, and the law is unsettled. The case of *Mudd* v. *Suckermore*, 5 Ad. & E. 703, (31 E. C. L. R., 791 to 812,) presents an amusing and instructive *expose* of the confusion which there prevails in practice, as to the mode of proof of signatures.

"Experts are persons instructed by experience, selected by courts or parties in a cause, on account of their knowledge or skill." Bouvier's Law Dict.; 1 Greenl. on Ev. § 440.

The comparison of handwritings is not a profession; there is no class whose members are *ex officio* experts. All men in the higher walks of business, in this country of paper money and multitudinous promissory notes, have more or less ex-

perience in testing the genuineness of signatures, and must acquire some skill.

PARKER, C. J., says, in *Robertson* v. *Stark*, 15 N. H., 113, cited on the other side, " witnesses, who have made it a subject of study and observation, may be admitted to give their opinion respecting handwriting, whether it is forged or is that of a particular individual." Lord DENMAN says, in *Mudd* v. *Suckermore*, (31 E. C. L. R., 810,) " the witness must be conversant with handwriting—a banker, a printer, the officer of a court of justice, to be entitled to any degree of authority;" and again, " but if he is a person of some skill, (however low in degree and however generally shared with him,) he does what, possibly, the jury may be incompetent to do." In *Tilman* v. *Tarver*, R. & M., 141, (21 E. C. L. R., 400,) ABBOTT, C. J., directed the person producing the paper to compare it with the genuine signature, and to say, upon oath, whether he believed the writings were by the same person, citing a similar instance where Mr. Justice Lawrence directed a gentleman, accidentally in court, to make a comparison of writings, and testify. These were ancient writings, but that can make no difference in the principle. The remark of C. J. BRONSON, in the *People* v. *Spooner*, 1 Denio, 343, is mere *obiter dictum*, as the case was decided on the ground that experts in handwriting could not be received at all, and, therefore, it was unnecessary to decide whether the witness offered, a clerk in chancery, was an expert; and Mr. BRONSON wisely said, in effect, that several classes of persons had as high a degree of skill as clerks in chancery. In the case of *Lincoln* v. *Barry*, 5 Cush. 591, also cited by the counsel, the Court say : — " there must always be a preliminary inquiry by the Court as to the fact of the witness' science and skill, and his capacity to form an opinion upon the subject matter; and this must often depend upon circumstances of so peculiar a nature and character, that it is difficult to lay down any general rule to guide the decision of the Judge in such a case."

To determine what qualifications should be required in a witness to enable him to testify by comparison, it may be

necessary to consider what more such an one is authorized to do than can be done by any ordinary witness. The usual mode of proving or disproving the genuineness of a signature, to which there is no subscribing witness, is, by the opinion of witnesses who have seen the party write, have corresponded with him, or have seen his genuine signature in some other way. Now, one of this class, in testifying, forms his opinion by a comparison of the signature in question, with the impression in his mind, the image on his memory, left by the genuine writing. That impression may be weak, that image may be faint, from a want of care in observing, or from lapse of time. The expert, in testifying, gives an opinion, formed by a comparison of the signature in question with the genuine signature before him. How much more skill and experience does it require to make the latter comparison than the former ?

In the case cited by the counsel from 9 Conn., a cashier was admitted because he was a cashier. If a cashier of a $50,000 bank, who may not have been in office more than a week, has the requisite skill and experience, "*virtute officii,*" why should Mr. Merrill have been excluded, who for the last five years has been engaged in collecting and disbursing all the funds used in constructing and operating a railway fifty-five miles in length and costing nearly $2,000,000, and who probably handles more money than such cashier ?

If Mr. Merrill had not the requisite experience, who has it ? How many years must a man be engaged in examining money and comparing signatures ? How many bank bills must he examine ? How many signatures must he test ? It is palpable that there can be no rule. The practice is to admit men of much less experience and skill; and that practice is founded on the common sense of the matter.

2. On the motion for a new trial, the only question is this, has the appellee, as a matter of law, a right to demand another trial by jury ? The counsel, in his argument, seems to claim this as a matter of right, as in a case at common law. We deny that he has, or ever had, a right to demand a trial by jury. This Court, sitting as a court of probate,

does not derive its authority, or mode of proceeding, from the common law. The statute has conferred upon it the powers of ecclesiastical courts, and prescribed modes of proceeding borrowed from those courts, and the courts of chancery. The whole proceeding is that of a court in the exercise of chancery powers. There are not, necessarily, any pleadings in the common law sense of the term; but the case comes up for a hearing, in the first instance, by the Court, upon the prayer that the will be allowed, and, upon the reasons against its allowance, filed in the Court below; the Court having full power to settle all questions of fact, as well as of law. If the Court wishes the aid of a jury in settling any question of fact, the statute authorizes them to frame a feigned issue and send it to a jury for trial, as practiced in courts of chancery; a practice not known, I believe, to the ecclesiastical courts of Great Britain. In the trial of such issues, this Court has one great advantage over the English Courts of Chancery, for it has its own jury, presides at the trial, and hears the evidence; whilst the chancellor is under the necessity of sending the issue to be tried in a Court of Law; and whilst the English Court of Chancery has no knowledge of the doings or conclusions of the jury, save what the verdict affords, this Court knows every thing which takes place at the trial; for every thing appears upon its records or files. But such verdicts are never conclusive in England. They do not bind the conscience of the Court. The practice there is to send them back as often as they prove unsatisfactory, or to decide the matter of fact in direct opposition to their finding. The object in sending the questions to a jury is to satisfy the conscience of the Court. If the verdict returned satisfies that conscience, it is acted upon by the Court; if it does not, it is set aside and a new trial is ordered at law, or the Court proceed to decide the cause without the aid of a jury. 2 Story's Eq. Jur. § 1447; Adam's Eq., 670 * 377.

The verdict, then, is not necessary to, nor does it constitute the basis of the judgment, as in a suit at law. The

matter of form, then, is not material, as at common law. It is enough to satisfy the Court that the issue presented has been decided. In our mode of proceeding, with the jury present in the probate court, no formal verdict is necessary. It is enough for the Court to put such questions as it pleases, and for the jury to answer them. If the Court be satisfied with those answers, it may go on and make the decree. If dissatisfied, it may put the same questions to another jury. If a verdict be returned after the strictest common law form, after the strictest and most regular trial, it binds nobody, and may be set aside by the Judge, if he is at all dissatisfied with the result to which the jury came.

Suppose no verdict had been taken, except so far as the answers of the jury had been considered a verdict; what then? The decree in such cases requiring no verdict to rest upon, as before shown, the want of one would not vitiate it. "But the answers were not affirmed and recorded;" there was no need of affirming them, if the conscience of the Court was satisfied. But the counsel wittily says, "between the first finding and the recording, there is usually *locus penitentiæ,*" which was wanting in this case. The jury were informed by the Court that a verdict would be framed upon, and in accordance with, their answers. They understood that the verdict, signed by their foreman, was but the formal, technical expression of the ideas expressed by them in their answers; and under that impression they affirmed it. Here was more than the ordinary " *locus penitentiæ,*" all the delay whilst the verdict was being prepared; and yet, not a penitential sigh or tear was heard or seen on the panel.

But " it was not recorded." Recording is not necessary to give validity to a decree. If deemed important to have it recorded, the Court have power over their own records, and can order it. The record of this case is not yet closed, and the answers are on the files of the Court. As a matter of fact, those answers are as much recorded, that is, spread upon the record, as is the formal verdict. The only difference is,

that the clerk told the customary lie to the jury about the latter; "hearken to your verdict as the Court have recorded it," and did not tell it about the former.

I maintain, further, that the verdict is sufficient. The form of the verdict, if one be taken, is entirely subject to the discretion of the Court, and is sufficient when it expresses the conclusion which necessarily results from the finding by the jury. The whole argument of the counsel to the contrary proceeds on the ground that the Court, sitting in this matter, are sitting as a Court of common law, and are to be governed by the strictest rules of common law. In *Dublin* v. *Chadbourn*, 16 Mass. 442, JACKSON, J., says, "there is no case in our jurisprudence in which the due execution of a will, the sanity of the testator, the attestation of the witnesses, or any question of that kind, can be tried in a court of common law." In *Small & als.* v. *Small*, 4 Greenl. 220–5, MELLEN, C. J., says, "the question, whether an instrument purporting to be a last will and testament ought to be approved and allowed as such, is one of purely probate jurisdiction, and so not examinable by us, in virtue of our common law jurisdiction." This distinction is well settled and established by our statute and uniform practice.

But I maintain, further, that if this were a case at common law, the verdict must either be sustained as sufficient, or amended.

Hobart, 54, lays down this rule, "that, though the verdict may not conclude formally, or punctually, in the words of the issue, yet, if the point in issue can be concluded out of the finding, the Court shall work the verdict into form, and make it serve."

This rule was cited and acted on in *Hawks* v. *Crofton*, 2 Burr. 698; and another case, *Adlam* v. *Tow*, was cited from the bench, where a similar doctrine was laid down; and stated to be the law in *Porter* v. *Rummery*, and *Pettes & wife* v. *Bingham, Ex'r*, 10 N. H., 514. If erroneous in form, the Court have power to amend it, both at common law, and by statute. *Petrie* v. *Hannay*, 3 T. R. 659; *Ferguson* v. *Mahon*

39 Eng. Com. Law R., 11 Adol. & El. 179; *Rew* v. *Barker*, 2 Cowen, 408, 410; *Clark* v. *Lamb*, 8 Pick. 415 – 418; *Crofton* v. *Illsley*, 6 Greenl. 48; *Close* v. *Gillespie*, 3 Johns. 518; 14 Johns. 219; *Hammer* v. *McConnel*, 2 Hammond, 31.

The Court have the amplest material to amend by. They have written evidence of what facts the jury did find. They know that the jury intended to render, and supposed that they were rendering, such a verdict as those facts justified and required. If there be any error, it is the error of the officer of the Court who drew up the verdict.

If, therefore, the verdict be erroneous, the contestant now moves that it may be amended and put in proper form.

The opinion of the Court was drawn up by

TENNEY C. J. — It is provided in R. S. of 1857, c. 63, § 24, that, in appeals from the Judge of Probate to this Court, if, upon a hearing, any question of fact occurs proper for a trial by a jury, an issue may be formed for that purpose, under the direction of the Court, and so tried. This course is analogous to that pursued in equity courts, where a feigned issue is prepared under the direction of the chancellor, or other person who exercises his authority. If the court of chancery is distinct from the courts of common law, and having full equity jurisdiction, the issues thus prepared are sent to a court of common law for trial. 1 Hoffman's Eq. Prac. 504. In that case, the Court of Chancery passes an order directing when and where the issue shall be tried, and the question to be put in issue, and summitted to the jury. Ibid, 504; 3 ibid, appendix, No. 173. If the parties differ as to the form of the issue, the question is referred to a master for settlement. Ibid, 505. When common law courts have limited equity jurisdiction, feigned issues are often tried by a jury in attendance for the purpose of trying issues of fact, arising in common law proceedings. This is the case, in this State, in matters of probate, and perhaps in those presented in equity suits before them.

When a will has been filed in a Probate Court, for approv-

al and allowance, and the subject comes before this Court as the Supreme Court of Probate, on an appeal from the Judge of Probate, certain questions of fact have often arisen which are controverted. Whether the will was executed by the one whose signature purports to be affixed thereto; whether he was of sound and disposing mind at the time of the execution, are examples. In such cases, it is usual for the Court to direct issues as a matter of course. But, whether the facts in dispute, shall all be settled by the jury or not, is subject to the discretion of the Court, in the exercise of its discretion.

Notwithstanding certain issues of fact may be tried and determined by a jury in probate proceedings, other questions of grave import, of law, and even of fact, may be suffered to remain, to be settled by the Court, and which may materially influence the final decree. Something in the will itself, aside from any thing involved in the issues of fact, tried by a jury, may bear upon the question, whether the will shall be approved or not. The jurisdiction of the Court of Probate in the county, where the decree from which the appeal was taken, may be denied. Another will, claimed to have been executed subsequently to the one in controversy, may be introduced, in relation to which no issue of fact has been made up.

The great question involved, where a will is offered for probate, is whether it is the last will and testament of the person, purporting upon its face, to be the testator. Answers to the questions, in proper form, was it, or not, executed in a legal sense, by the person whose name is affixed thereto ? was he, or not, at the time of the execution, of a sound and disposing mind and memory ? and, was the will attested according to the requirements of law ? are all material elements in this general inquiry. All these may be answered in favor of the party praying that the will may be approved and allowed; and other questions may still demand the attention of the Court, before a final decree can be pronounced.

Upon issues in probate, the law gives no sanction to a relaxation of the fixed rules, relating to a jury trial in common law proceedings. The issues are to be determined by a jury,

through a verdict in form, in one case as in the other. The same precision in the issues made up, and the same direct and exclusive finding of the jury thereon, are required in probate trials as in those at common law. *Germand* v. *Germand*, 6 Johns. Ch. 347. No rule of law or practice has dispensed with the mode which has been in use under the latter, to fix with certainty, that the verdict returned and signed by the foreman, is the finding of each member of the panel, when the proceedings are before the Supreme Court of Probate. The law is well settled, that in trials in the court of the last resort, in probate and at common law, the verdict after being returned into court, in order to be obligatory, must be constructively, at least, recorded. Till that is done, any member of the jury may withhold his assent, though he was satisfied of its truths when it was made up and signed by the foreman. To make it binding upon the parties, each juror must signify his approval in open court.

The legal definition to the term " verdict," is the answer of the jury concerning any matter of fact, in any cause committed to them for trial; wherein every one of the twelve jurors must agree, or it cannot be a verdict. 1 Just. 226. A privy verdict is of no force, unless afterwards affirmed by a public verdict, given in open court, wherein the jury may, if they please, vary the privy verdict. But the only effectual and legal verdict, is the public verdict, in which they openly declare to have found the issue for the plaintiff or defendant. 3 Black. Com. 377. The verdict is not valid and final until pronounced and recorded in open court. *Goodwin* v. *Appleton*, 22 Maine, 453. When a verdict has been returned, affirmed and constructively recorded, the duties of the jury in relation to it, have been fully performed, and their power exhausted; (*Snell* v. *Bangor Steam Nav. Co.*, 30 Maine, 337,) clearly implying that their duty is unperformed, and the power not exhausted till this is done.

In the case before us, three distinct issues were directed by the Court. They were made up and signed by the counsel for the appellant, and joined by the counsel for the appellee.

One of these issues was upon the denial that the will was signed by the supposed testatrix, or by some person in her presence, and by her express direction. Another, upon the denial that she was of sound mind, at the time of the execution of the instrument, and the third was upon the allegation that the will was not duly attested. The case does not disclose that there were other controverted facts involved; and, we do not presume that there were; but such a condition of things is not negatived. But general rules must be applied, unless cases are brought within the principle of some exception. What questions of law may arise in a given case, dependent upon the finding of a jury upon a special issue, which is precise, the jury cannot foresee and know. The point presented by the issue, should be rigidly adhered to in the verdict returned.

The verdict in this case, which was returned, recorded and affirmed, is in these words: — "The jury find that the said instrument offered as the last will and testament of the said Mary Elizabeth Withee, is not the last will and testament of the said Mary Elizabeth Withee," and is signed by the foreman. This verdict is not an affirmation that they agreed one way or the other, as an entire jury, upon either of the issues. They have, by the verdict, covered the whole case, under the great question which was submitted on the appeal, and decided the law and fact against the appellee. The case of *Coffin, Judge*, v. *Jones*, 11 Met. 45, cited for the appellant, is in point. This was debt on an administration bond. The defendant pleaded, 1st, *non est factum*; 2d, *solvit ad diem*, and 3d, *solvit post diem*. Issues were joined upon each plea. At the trial, the jury found "that defendant is not indebted to the plaintiff in manner and form as alleged in the writ and declaration." It is said, by WILDE, J., in delivering the opinion of the Court, "some of the jury might have been of the opinion that the deed had not been executed by the defendant, or that it had been improperly altered, but that no payment had been made; while others might be satisfied with the evidence of the execution of the deed, and also of payment. If the jury were

divided in opinion, they could not agree on either of the issues, yet, they would all agree that the defendant was not indebted;" "so that the verdict is substantially defective and uncertain."

But the counsel for the appellant insists that, in this case, the uncertainty arising from the general verdict is removed by the special findings of the jury. The evidence of these find-ings is upon a paper, containing, in substance, the question presented in each issue prepared by the Court, answered by the word "Nay," signed by the foreman and handed to the clerk, who read the questions and answers in open court. But the case finds that the said questions and answers were not otherwise read, recorded or affirmed.

According to the principles already stated, the verdict which was put into form, signed by the foreman, recorded and affirm-ed, not being a verdict upon the issues, cannot be valid for any purpose, and, therefore, cannot aid the appellant under the special findings. And, if a verdict conforming to the issues, in form, properly verified by the signature of the fore-man is ineffectual, unless it is recorded and affirmed, it cannot with propriety be held, that the simple answer in writing signed by the foreman, read in court, without record, or af-firmation will be valid.

The verdict cannot now be amended. The written answers of the foreman to the questions proposed have not been shown to have been the answers of each juror, when they were read in Court. Some of them, and even all, may have varied from their first opinion, as they had a right to do; and we have not the evidence, that the law requires, that the opinion was unanimous. There being no verdict in the case, in the legal sense of the term, no foundation for an amendment exists.

The exceptions, therefore, taken to the overruling of the motion of the appellee, on the fourth, fifth, sixth and seventh grounds, as stated in the motion, are sustained; and overruled on the other grounds.

N. D. Gould was introduced as a witness by the appellant,

to give his opinion, touching the handwriting of the signature to the will. He was admitted by the counsel for the appellee to be an expert in relation to handwriting generally. But he did not profess to have any knowledge whatever of the handwriting of the supposed testatrix. The question was put to him, whether in his opinion, the signature to the will was a genuine signature. This was objected to by the appellee, but he was allowed to answer, and testified that he did not think it was the genuine signature of any body.

The question involved in the evidence thus allowed, has been much discussed in courts, and decisions thereon, are not in perfect harmony. But it is believed, that the better opinion, is in favor of the competency of the evidence. In this State and Massachusetts, it is practically held admissible with general uniformity. We think, too, it is admissible on principle.

It cannot be supposed, that a person in making a disposition of his property by will would designedly counterfeit the handwriting of his signature. If an instrument, purporting to be the last will and testament of a deceased individual, should be proved to have the signature in a counterfeited hand, and that by persons who knew well his handwriting, it cannot be doubted, that such evidence would tend to invalidate the will, and would be held competent. If evidence should be offered, tending to prove, that persons of experience in judging of handwriting, could determine with a high degree of certainty whether handwriting of a person of whom, and of whose handwriting they were entirely ignorant, was natural or simulated, we see no reason for excluding the evidence as relevant to the issue. If it is proper in the testimony of an expert, who has knowledge of the handwriting of the person, whose supposed signature is denied to be genuine, we see no legal ground for its exclusion in the other case. An expert in analyzing the blood which has stained white cotton cloth, has been allowed to testify, that a distinction can be detected between the blood of human beings and that of some other animals; and have been permitted to testify accordingly.

*State* v. *Knights,* 43 Maine, 11. This has been allowed on the same principle, that physicians and chemists have given opinions touching the presence of arsenic, prussic acid and other poisons in the human system, even from the effects of each, as determined by skill and experience. And certainly with no less propriety was the evidence in question held admissible.

We do. not doubt, that Elias Merrill, under the evidence offered, was properly regarded as an expert, and as such, permitted to give testimony. No objections were made to the opinions expressed by him, but the rulings were only in relation to his being allowed to testify at all, as an expert.

. The questions put to the witness, who testified to the execution of the will, we think, were not objectionable, under the remark of the Court, that being upon collateral matters, the answers could not be contradicted, but must be received as true. The truth of the statements which were relevant, introduced by the appellee, could be tested to some extent in the same manner.                    *Exceptions sustained.*

RICE, HATHAWAY, APPLETON, CUTTING, and GOODENOW, J. J., concurred.